IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| MARIE HASTING | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FIRST COMMUNITY MORTGAGE | ) |
| | ) |
|     Defendants | ) |

## COMPLAINT

JURISDICTION AND VENUE

1. This action is brought to remedy discrimination on the basis of sex, and national origin in the terms, conditions and privileges of employment and to remedy retaliation against Plaintiff for activity protected under Title VII all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. (Title VII). Further, Plaintiff alleges disparity in pay based on gender in violation of the Equal Pay Act, 29 USCS § 206(d).

2. Damages and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §2000e (f) and (g) and 29 USC §216 (b).

3. Plaintiff has complied fully with all the prerequisites to jurisdiction in this Court under Title VII. Jurisdiction of the Court is proper under §706(f)(3) of Title VII, 42 U.S.C. §2000e-5(f)(3).

4. As the unlawful employment practices complained of herein occurred within the Middle District of Tennessee, venue is proper in this District pursuant to §706(f)(3) of Title VII, 42 U.S.C. §2000e-5(f)(3)

PARTIES

5. The Plaintiff, Marie Hasting, a female Hispanic and a resident of Murfreesboro Tennessee, filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) against Defendant, and was issued a right to sue on May 25, 2017.

6. Defendant, First Community Mortgage (hereinafter referred to as "Defendant" is a for-profit domestic corporation entity whose principal office is located at 275 Robert Rose Drive, Murfreesboro, Tennessee. The registered agent for service is Scott Cocanougher, 207 Elm Street, Shelbyville, Tennessee 37160-2813.

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7. Plaintiff commenced employment with Defendant in 2014 as Director of Human Resources. Keith Canter "Canter" CEO, and Philip Carlton "Carlton" President, offered Plaintiff a salary to be paid semi-monthly and guaranteed quarterly bonus.

8. Canter agreed that after one (1) year of employment, Plaintiff's salary would be increased by 25%.

9. Further, Defendant agreed that in consideration for Plaintiff accepting their employment offer that she would be: 1) promoted and become a part of the executive team; 2) receive full support from the executive team; 3) be afforded the ability to add staff and grow the Human Resource department.

10. At all times relevant to the subject matter of this lawsuit, Plaintiff observed discriminatory actions and practices by Defendant, which she believed in good faith to violate Federal law. These included gender discrimination, discrimination based on national heritage, and violations of the Equal Pay Act.

11. Plaintiff would state that one of her duties as the Director of Human Resources at First Community Mortgage was to review and approve the payroll every pay period (twice a month). Plaintiff would get the payroll registry prior to running the payroll and had to look through it carefully and make sure that everyone's pay was correct. This included reviewing not just regular pay but also bonuses, commissions, discretionary payments and deductions. Additionally, Plaintiff was responsible for payroll taxes and W-2's. Plaintiff would state that in that capacity she became familiarized with all Defendant's employees' salaries. Further, Plaintiff discovered early in her employment the disparity in salaries related to gender. The only woman, other than Plaintiff, in executive management, Samantha Meyer was paid at a significantly lower wage than her male counterparts in executive management.

12. Plaintiff would state that female employees were paid significantly less than that of male employees who did equal work which required equal skill, effort, and responsibility, performed under similar working conditions.

13. At all times relevant to this matter, Plaintiff was the only Hispanic woman in management.

14. Plaintiff would state that on more than one occasion, Canter told Plaintiff directly that he had considered several good candidates for her position but that he had chosen her because "we need to add some color on the team".

3

15. Further, Canter told Plaintiff when speaking of the company's website, "Have you seen our website lately?" "It's very white, and all men".

16. Plaintiff would state that she was instructed by Canter to add "color and more women" to the staff. From the preceding incidents, Plaintiff realized that, as a woman, she was considered inferior by the Defendant's male dominated executive management.

17. At all time relevant to the subject matter of this lawsuit, Defendant treated males more favorably than their female co-employees.

18. Plaintiff would state that Canter would go to lunch regularly with male management visibly excluding Plaintiff. Cantor would hold organizational meetings that affected Human Resources, but Plaintiff was not privy to the meetings. When Plaintiff made suggestions or comments, Canter would present Plaintiff's suggestions to other male employees for their opinion even though the matters concerned only human resource issues, of which other management personnel were not well-versed.

19. Further, Plaintiff would state that Canter made no secret about the fact that he granted unlimited personal time off (PTO) to all of his direct male reports with the exception of two women, Plaintiff and Samantha Meyers.

20. Plaintiff would state that she was present at meetings with Canter and Carlton where they openly spoke negatively of women subordinates. Plaintiff was offended by the derogative comments leveled towards female staff.

21. Plaintiff would state that her credit check was run after being hired. After some time on the job, Plaintiff learned that Defendant only requests credit checks on employees that

originate loans. Plaintiff's position did not require a credit check as she never originated loans or have any access to loans.

22. Plaintiff would state that she is aware of only two individuals in management had pre-employment credit reports performed by Defendant, and they were both Hispanic. Plaintiff would state that it was the usual practice of Defendant to only perform pre-employment credit checks on those employees who worked as loan originators. Plaintiff would state that the differential treatment afforded her was because of her national origin and gender, Hispanic and female.

23. On or about August 2015, Plaintiff met with Carlton to share her concerns that Defendant was exposing itself to civil liability. Carlton dismissed Plaintiff's concerns and did nothing to curtail the negative treatment of women based on gender. Further, Plaintiff voiced her concerns about Keith Canter's differential treatment of women.

24. Plaintiff would state that after her meeting with Carlton to express her concerns, the work environment changed and Defendant began retaliatory actions against Plaintiff.

25. On or about November 2015, Keith Canter changed Plaintiff's compensation by taking away her bonus structure making Plaintiff the only Director to be ineligible for a bonus. Plaintiff was also notified that she would no longer report directly to Canter, the CEO, but rather she would now report to Carlton. Further, Canter had Carlton perform Plaintiff's annual performance review, even though she had reported to Cantor the entire year.

26. On or about December 2015, Canter suggested to Plaintiff that she should move her office away from the executive area and upstairs. When Plaintiff refused the offer, Canter had her moved involuntarily. Plaintiff's office in the executive area was then given to a male employee.

27. In 2016, Plaintiff was promoted to Vice President of Human Resources without any change in compensation.

28. On or about March 2016, Plaintiff met again with Carlton and shared more concerns about Canter's behavior. After several complaints from female employees about adverse gender treatment, Carlton told Plaintiff about the "penis club". The penis club consisted of a group of male managers and executives who would go to lunch together, have meetings and socialize together during work hours. Plaintiff expressed concerns about the exposure to civil liability the "penis club" could create for Defendant. Shortly thereafter Plaintiff was told that she was to put on hold her objective of growing the Human Resource department until further notice. Further, Plaintiff's one assistant was no longer permitted to work overtime hours putting more pressure on Plaintiff.

29. The "penis club" was not a club per se, it was rather a group of entirely male management from the River View building who regularly meet and lunch together. It was a gender specific group that excluded women. Members of executive management refered to it as the "penis club" because it is entirely men making company decisions without females present. Members of management who had knowledge and spoke openly about the "penis club" included: Phillip Carlton, President, Loretta Roberts, VP of Compliance, Robin Harris, VP of Underwriting, Brenda Jones, VP. A few members of the restrictive group are: Keith Canter, CEO and Andy Voyles, Executive Vice-President, as well as other management-level males.

30. On or about August 2016, Plaintiff asked Carlton for a bonus for herself and for her assistant due to the tremendous amount of work that had been accomplished. Carlton

initially agreed stating that he had been thinking about doing something "nice" for Plaintiff but later denied the bonus because Canter did not approved the request.

31. On or about October 2016, Plaintiff was asked by Carlton to complete her self-assessment for the annual review. The review was to be held on or about November 24, 2016. The review was postponed until after an executive briefing which was to occur on January 3, 2017. Prior to the briefing, Carlton asked Plaintiff misreport concerns regarding implementation of new employee performance system. However, during the executive meeting Plaintiff was asked questions regarding support, staffing, reports, and communication to which she replied to the best of her knowledge. After the executive meeting Plaintiff was told by Carlton that she had "thrown him under the bus".

32. The next day Plaintiff received an email from Carlton letting her know that her annual review was scheduled for Friday, January 6, 2017. Plaintiff received a negative review focused around the topics covered in the executive meeting.

33. Plaintiff would state that she was denied an increase in salary. Plaintiff was the only Vice President not to receive an annual increase during the 2016 annual review process.

34. Defendant's treatment of women created stress and anxiety for Plaintiff as a Human Resource professional and she sought medical treatment.

35. On multiple occasions when Plaintiff brought serious concerns to Canter and/or Carlton she was asked to "let it go". These include: 1) complaints from a female employee regarding inappropriate treatment from a male employee related to gender and age; 2) complaints about a male manager coming to work intoxicated on a regular basis; 3) complaints about a male branch manager forging customer signatures on mortgage loans; 4) complaints about a Vice

7

President in the wholesale division forging client signatures on loan purchases. Carlton ordered Plaintiff not to document anything so that there would not be a record, in the event of an audit.

36. Plaintiff would state that the retaliatory acts described herein by Defendant created a hostile work environment and ultimately forced her to resign. Plaintiff was constructively discharged January 9, 2017. In her resignation letter to Carlton Plaintiff summed up her work experience as follows:

> "You and I have met on several occasions and discussed in details my concerns and dissatisfaction with decisions, exceptions, lack of support, favoritism, discrimination and most importantly the way that I have been treated during my tenure with FCM. Unfortunately the working conditions have not changed. If anything it's gotten worse. For me this has become a very unprofessional and unhealthy environment. Therefore I feel it is time for me to seek employment elsewhere."

37. Plaintiff would state that the behavior from Canter and Carlton were in response to her refusing to participate in gender discrimination and inappropriate behavior and treatment of female employees. The adverse employment actions (retaliation) were taken in response to Plaintiff's objection and refusal to participate in gender, sex based discrimination.

FIRST CAUSE OF ACTION

38. Plaintiff repeats and re-alleges each and every allegation stated heretofore with the same force and effect as if stated herein.

39. Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, female, in contravention of Title VII.

40. Plaintiff is suffering and continues to suffer irreparable injury and damages as a result of Defendants' discriminatory actions unless this Honorable Court grants relief.

## SECOND CAUSE OF ACTION

41. Plaintiff repeats and re-alleges each and every allegation stated heretofore with the same force and effect as if stated herein.

42. Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her national origin, in contravention of Title VII.

43. Plaintiff is suffering and continues to suffer irreparable injury and damages as a result of Defendants' discriminatory actions unless this Honorable Court grants relief.

## THIRD CAUSE OF ACTION

44. Plaintiff repeats and re-alleges each and every allegation stated heretofore with the same force and effect as if stated herein.

45. Defendants have retaliated against Plaintiff and have denied her opportunities and directly impacted her wages on the basis of her complaining of discrimination and harrassment in contravention of Title VII.

46. Plaintiff is suffering and continues to suffer irreparable injury and damages as a result of Defendants' discriminatory actions unless this Honorable Court grants relief.

## FOURTH CAUSE OF ACTION

47. Plaintiff repeats and re-alleges each and every allegation stated heretofore with the same force and effect as if stated herein.

48. Defendant has violated the Fair Labor Standards Act, specifically they are have acted in contravention of 29 USCS § 206(d) by discriminating between employees on the basis of sex by paying wages to female employees at a rate less than the rate at which they paid wages to male employees for equal work on jobs the performance of which required equal skill, effort, and responsibility.

49. Plaintiff is suffering and continues to suffer irreparable injury and damages as a result of Defendants' discriminatory actions unless this Honorable Court grants relief.

PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff**,** Marie Hasting, prays that this Honorable Court enter a judgment in her favor:

1) Declaring that the acts and practices of Defendants alleged herein are in violation of Title VII and the Equal Pay Act;

2) Awarding Plaintiff compensatory and other damages suffered by her, including but not limited to, damages for pain and suffering, humiliation and embarrassment, back pay, interest on back pay, front pay, lost benefits and any other equitable relief so determined by a jury, but not less than One Million Two Hundred Fifty-Thousand ($1,250.000.00) dollars.

3) Awarding Plaintiff both liquidated and punitive damages, and for pre-judgment interest, attorney fees 29 USC §216 (b) and the cost of this cause;

4) Granting such other and further relief as the Court so deems proper;

## DEMAND FOR A JURY TRIAL

Plaintiff, pursuant to the Federal Rules of Civil Procedure, Rule 38(b), demand a jury of six to try this case.

Respectfully Submitted,

s/Frank J. Steiner
Frank J. Steiner # 26920
2200 21st Avenue South, Suite 309
Nashville, Tennessee 37212
(615) 730-6090
*Attorney for Plaintiff, Marie Hasting*